## PETER CONSILLA *v.* PARMENAS BRISCOE.

*In Chancery.*

The complainant, as heir-at-law of Harman Consilla, instituted this suit against the defendant, in the late supreme court for the district of Kentucky.

Harman Consilla, by Silas Harlan, his attorney in fact, on the first day of November, in the year 1779, obtained from the commissioners for the district of Kentucky, the following certificate, to-wit:

"Silas Harlan, attorney for Harman Consilla, this day claimed a right to a settlement and pre-emption to a tract of land, lying on the waters of Salt river, on the east fork, by improving the said land in the year 1775, and residing in the country twelve months since. Satisfactory proof being made to the court, they are of opinion that the said Consilla has a right to a settlement of 400 acres of land, including the said improvement, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

And on the 15th day of November, in the same year, he entered his certificate for settlement with the county surveyor, in the following words, to-wit:

"Harman Consilla enters 400 acres, by virtue of a certificate for settlement, lying on the waters of Salt river, on the east fork."

Martin Stall, on the 12th day of February, in the year 1780, obtained from the said commissioners the following certificate, to-wit:

"Martin Stall, by William Stewart, this day claimed a settlement and pre-emption to a tract of land, in the district of Kentucky, on account of raising a crop of corn in the country, in the year 1775, lying on the town fork of Salt river, on both sides thereof, to include a large spring adjoining the land of Silas Harlan, running up the creek for quantity. Satisfactory proof being made to the court, they are of opinion that the said Stall has a right to a settlement of 400 acres of land, to include the above location, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

And on the 22d day of February, in the year 1780, entered his

certificate for settlement with the county surveyor, in the following words, to-wit:

"Martin Stall enters 400 acres, by virtue of a certificate, etc., lying on the town fork of Salt river, on both sides thereof, to include a large spring joining the lands of Silas Harlan, and running up the river for quantity."

And having assigned and transferred 600 acres of his pre-emption to the defendant, he entered the same with the county surveyor, on the 6th day of March, in the year 1781, in the following words, to-wit:

"Parmenas Briscoe, assignee of William Stall, enters 600 acres, part of a pre-emption warrant, No. 1,018, on the west and south side of his settlement, and to extend west for quantity."

And having also assigned 400 acres, the remaining part of his pre-emption, to William Stewart, the said William Stewart, on the 15th day of March, in the year 1781, entered the same with the county surveyor, in the following words, to-wit:

"William Stewart, assignee of Martin Stall, enters 400 acres, part of a pre-emption warrant, No. 1,018, to adjoin Briscoe's pre-emption, as assignee of the said Stall, on the west, and to extend west for quantity."

Parmenas Briscoe, on the 19th day of April, in the year 1780, obtained from the said commissioners the following certificate, to-wit:

"Parmenas Briscoe, by John Briscoe, Jr., this day claimed a settlement and pre-emption to a tract of land, in the district of Kentucky, on account of his having had a crop of corn raised in this district, in the year 1776, lying on a branch of Salt river, adjoining the lands of Martin Stall and Silas Harlan, agreeable to the lines agreed upon between the parties, in the year 1775, to include the boiling spring, and his improvement, which was made in the year 1774. Satisfactory proof being made to the court, they are of opinion that the said Briscoe has a right to a settlement of 400 acres of land, to include the above location, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

And on the 22d day of April, in the said year 1780, entered his certificate for settlement with the county surveyor, in the following words, to-wit:

"Parmenas Briscoe enters 400 acres, by virtue of a certificate, etc., lying on a branch of Salt river, adjoining the land of Martin Stall and Silas Harlan, agreeable to lines agreed upon between the

parties in the year 1775, to include the boiling spring and his improvement."

And on the 27th day of October, in the said year 1780, the said Parmenas Briscoe entered his pre-emption warrant with the county surveyor, in the following words, to-wit:

"Parmenas Briscoe enters a pre-emption warrant of 1,000 acres, adjoining his settlement on the east, and south, and north."

The annexed connected plat, No. 21, was returned in this cause, of which the following is an explanation:

1 2 3 4, the complainant's settlement survey, as heir-at-law of Harman Consilla, containing 439 acres. 1 4 3 5 6 7, Swearingem's, assignee of Consilla, pre-emption survey of 968 acres. 8 9 10 11 12, Parmenas Briscoe's settlement survey. 9 10 11 13 14 15 16, Parmenas Briscoe's pre-emption survey. 17 18 19 20, Parmenas Briscoe's settlement survey, as assignee of Martin Stall. 18 21 22 23 24 19, Parmenas Briscoe's pre-emption survey of 600 acres, as assignee of Martin Stall. C, Consilla's spring. B, Briscoe's spring. S, Martin Stall's spring, and the improvement, south 42 west, five and a half poles from the spring. From B, Briscoe's spring, to C, Consilla's spring, the course is south 13 degrees west, and the distance 330 poles. From C, Consilla's spring, to S, Stall's spring, the course is north 56 degrees west, and the distance 232 poles. The line S T shows the nearest distance from Stall's improvement to the north-west boundary of the settlement survey, which is 68 poles. From B, Briscoe's spring, to S, Stall's spring, the course is

south 54 degrees west, and the distance 330 poles. From C, Consilla's spring, to A, one of Stall's improvements, the course is north 74 degrees west, and the distance 108 poles. From A, one of Stall's improvements, to D, another of Stall's improvements, on the south side of Salt river, the course is south, and the distance 200 poles. 25 4 1 2 26 13, the interference between Briscoe's surveys and Consilla's settlement, which is 339 acres. 21 to 22, a line of George Caldwell's land.

It was proved in this cause that Harman Consilla came to Kentucky in the year 1775, and that in the year 1776 he improved and made corn at the spring designated in the connected plat by the letter C, and that he then declared that place to be his choice of the country.

That he enlisted under the command of Col. George Rogers Clark and went to Illinois, and was absent during the sitting of the commissioners, and that James Harrod was authorized by a power of attorney to act as his agent during his absence.

That the said Harrod and Silas Harlan laid the claim of the said Consilla before the commissioners, and that Harrod sold the preemption to Thomas Swearingem.

That Harman Consilla was killed, and that Peter Consilla, the complainant, was his brother and heir-at-law.

That the said spring and improvement were known in the year 1779 by the name of Harman Consilla's spring and improvement; and that the defendant knew the true situation of the said spring and improvement at least as early as the time of making his surveys.

It was also proved that Patrick Doran, in the year 1774, improved at Briscoe's, spring, designated in the connected plat by the letter B, and that he called the spring Briscoe's; and that he said, in the year 1775, that he had received from Briscoe a rifle gun for it.

That Martin Stall, with others, in the said year 1774, built a cabin on the west side of Salt river, near where a spring broke out of the bank (designated in the connected plat by the letter S).

That Stall had several other cabins in the country, and that his lottery cabin was in Joseph Carshweller's field, at some distance from this place.

That Stall had been heard to claim Briscoe's spring and improvement, and had agreed upon a dividing line between that spring and improvement and Harman Consilla's; but as to this point there was a contrariety of testimony; Harrod, the agent of Consilla, declaring only that Stall appointed a day on which they

were to meet on the ground and agree on a dividing line, and that he attended, but Stall did not.

It was also proved that Stall sold his settlement right and six hundred acres of the pre-emption to the defendant.

BY THE COURT.—The court of commissioners, by their certificate expressly declaring, that they grant to Consilla, for improving land in the year 1775, and residing in the country twelve months afterward; and it appearing that their certificates to Stall and Briscoe were granted for raising corn in the district, the one in 1775 and the other in 1776, we are of opinion that Consilla's must be construed to be an actual settlement, and that Stall's and Briscoe's can only be considered as village rights, of which the actual settlements from the land law, and from reason and equity, ought to have the preference; and this opinion we are satisfied is right, from the consideration which must strike every person, that a village right, not being confined to any particular spot, may be laid wherever there is vacant land convenient to their village, or town, and under no farther restriction than this, viz: that it shall be land to which no other person hath, by this act, the right of pre emption. Chan. Rev. 91.

But an actual settlement is confined to a particular spot. It must be surveyed so as to include the settlement on which it is founded, and can go nowhere else.

We can not admit parole proof to amend or explain an entry, but we think such proof may be received in support of an entry.

We must consider the entry as a record, and, therefore, on this occasion, and on all others, we give it its full weight. There may be, however, in many cases (as we find in this) instances where it may be proper and necessary to admit parole proof to support an entry, and in such cases, and such only, we think parole proof can or ought to be received; and this opinion we find to be warranted by the most respectable authorities, and we think it is strictly conformable to justice and equity.

The plaintiff's entry with the surveyor is, perhaps, not so full as it might have been made; this we think, however, is no objection to it; it refers to the entry with the commissioners, which is set forth in their certificate, and that being recorded with the surveyor, the defendant had by law a right to see and examine it; the commissioners' certificate must, therefore, be considered as a part of the entry with the surveyor, the two together making the entry

complete, by which the plaintiff is bound, and which the defendant, too, was bound to take notice of in making his entry.

We find that in the plaintiff's entry there is sufficient matter to answer the requisition of the land law, if what is expressed with respect to the east fork of Salt river was entirely left out. We therefore think it right to consider that part of the entry as surplusage and of no effect.

This opinion, we think, is agreeable to law and equity, as it is also agreeable to a former determination of this court, in the case of *Pawling* v. *Merewether's heirs*, where it was found that in Cowan's (the plaintiff's) entry there was uncertainty, and part of what he called for (to include head-waters, etc.) absolutely impossible. But the court considered that a part of his call, to-wit, to include his cabin, etc., being precise and certain, it was sufficient to answer the requisition of the law, and that such part thereof as was uncertain and impossible ought to be considered as surplusage.

The plaintiff having made his improvement in 1775 is not positively or strictly proved by any of the depositions; some of them, however, together with his having no other land in the country, and declaring at a very early period that the place where he had improved was his choice of the whole country appearing clearly to this court, furnish a strong presumption that it was made then. But we must be of opinion that his having made his improvement in 1775 can not be controverted, for the commissioners' certificate declares that such was the case. We must, therefore, consider that point to be fully proved.

We find it also proved to our satisfaction that the plaintiff made corn in the year 1776, and that Consilla's spring and improvement were notorious to the neighborhood, and even to the defendant himself, long before he made his entries, and this we are of opinion in making his entries, he was bound to take notice of.

We find that neither the plaintiff in surveying his settlement, nor the defendant in surveying his own particular settlement right, have surveyed strictly agreeable to their entries; the difference, however, arising from this is inconsiderable, and includes so small a quantity of land that its value would not be equal to the expense of surveying; and as no other person is interested in this business, nor can any way be affected by this decree, we are therefore induced to pass over that circumstance.

Decree for the complainant for all the land, either in the settlement and pre-emption held by the defendant in his own right, or

in that held by him as assignee of Martin Stall, which shall be found to interfere with the complainant's settlement. ·

From this decree the defendant appealed, and at a court of appeals held for the commonwealth of Virginia, at the May term, 1792, the said decree was affirmed with costs, and the decree of affirmance being now produced to this court. It was decreed and ordered that the complainants proceed to carry into effect the former decree of this court, etc.

NOTE.—As a very important point is generally considered as having been settled by the opinion given in this cause, that is, that what was certified by the commissioners should be taken as true, and should not be contradicted. A summary of the whole of the testimony respecting the time of making Harman Consilla's improvement is here given.

James Harrod swore that in the year 1775 Harman Consilla came to Kentucky with him, and that in the year 1776 he made an improvement on the east branch of Salt river, at the place where Mark Lee has since lived (which was proved to be the place designated on the plat by the letter C).

That he cleared about 2 acres of land there, planted corn, tended it, and raised it to perfection.

That he often heard the said Consilla claim the land whereon he made the said improvement, as his choice of the country on which he designed to live, and that he never heard him claim any other.

Jacob Sodowskie swore that he was acquainted with Harman Consilla, and that he was frequently in company with him in the winter of 1776, at the place where Col. James Harrod since lived, in Mercer county; and that in the month of February, he believes, in the year 1776, he heard the said Harman Consilla say he was going out to Salt river to clear land to plant corn; and when he returned he informed him he had been at work clearing land.

Thomas Denton swore he was in Kentucky in the year 1776, and that he was at the spring where Mark Lee has since lived, and that his horse ate of the corn that had grown at an improvement at the said spring, and that Harman Consilla told him it was his spring and improvement.

The above was all the testimony produced to that point. The bill states that Harman Consilla obtained a certificate, but it is not alleged that he did improve in 1775. But the following interrogatory is put to the defendant, to-wit:

" Whether he does not know, or believe, that the said Harman Consilla made an improvement and raised corn on the waters of Salt river in 1775, at or near a spring at which Mark Lee now lives?"

To which the defendant answers in the following words, to-wit:

" This defendant never knew, of his own knowledge, that Harman Consilla ever raised corn where Mark Lee lives in 1775, or near the place; and he can not believe that was the place granted to the said Harman Consilla by the commissioners."